UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATLYN BEATTIE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ABG JUICY COUTURE, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

# INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant ABG Juicy Couture, Inc. ("Juicy") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on Juicy, Juicy advertises the price of its retail items, along with an advertisement for either free or flat rate shipping. Those pricing representations are false, however, because Juicy surreptitiously adds junk fees to consumer purchases, including a so-called "Shipping Protection" fees.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) Juicy sneaks these fees into consumers shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering Juicy's promise for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to reasonable consumers, like Plaintiff, who would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to Juicy's deceptive tactics.

5. By unfairly obscuring their true shipping costs, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do <u>not</u> assess such a fee.

6. Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

## PARTIES

7. Plaintiff Katlyn Beattie is a resident and a citizen of Minneapolis, Minnesota.

8. Defendant ABG Juicy Couture, Inc. is a clothing retailer headquartered in New York, New York.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

   a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

   b. at least one member of the proposed class is a citizen of a State other than New York, § 1332(d)(2)(A); and

   c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Juicy is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

I. **Overview of Juicy**

11. Juicy is a popular clothing and accessory retailer. Juicy sells its products both online and in stores.

12. Juicy is headquartered in New York, New York, and on information and belief, the decision to charge Shipping Protection fees to consumers originated in New York.

13. At no point in the purchasing process are consumers asked to assent to Juicy's Terms of Use and Service.

II. **Juicy Surreptitiously Adds Fees to Consumers' Carts**

14. Here's how Juicy's deception works. When a consumer adds an item to their online shopping cart, the consumer is informed that purchases over $150 are entitled to free shipping ($109+$41=$150):



15. When a consumer clicks the large pink "CHECKOUT" button above, the consumer

3

is directed to Juicy's checkout screens where a "Shipping Protection by Route" fee is automatically added to the consumers' cart, without consumers having done anything at all to add the fee:



16.     On information and belief, the added Shipping Protection fee amounts to a percentage of the transaction. On information and belief, the fee is added via a tiny toggle hidden on the checkout page that automatically opts consumers in to the "Shipping Protection." On information and belief, the toggle is intentionally designed to go unnoticed by consumers like Plaintiff, who did not notice the fee. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the added Shipping Protection charge is optional, because it is presented in the cart as mandatory.

17.     Thus, reasonable consumers believe they have no other choice but to pay the add-on fee, which they were never previously informed of. This is a classic bait & switch.

18.     Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. And others still notice the previously

4

undisclosed fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the Defendant's system. So it doesn't make sense to start over and research whether there may be some other way to avoid the fee. So there is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating Defendant's deceptive screens. The deceptive checkout practice has done its job and diverted the sale to Defendant.

19. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive. Imagine a scenario in which a consumer goes to the grocery store, and while being checked out by the cashier, the cashier sneaks a pack of gum on the conveyer belt without the Plaintiff having done anything at all to add the item or noticing that that the item was added. What happened to Plaintiff during the online checkout process is no different.

20. As the Federal Trade Commission ("FTC") notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

5

21. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Juicy. The Wall Street Journal recently highlighted the problem, stating:

> Some brands automatically add optional coverage to orders. *Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process*.

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

22. Upon information and belief, Juicy is aware that by programming its website to automatically opt in consumers to "Shipping Protection" fees, most consumers will unknowingly purchase the "protection." On information and belief, Juicy is further aware that had it programmed its website to offer *optional* "protection" (requiring an opt-in), the vast majority of consumers would not purchase it.

23. Juicy's practice is deceptive. As a reflection of this, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, banned this pre-selection practice from retail purchases as of February of 2025.

24. In fact, since Plaintiff's purchase, Juicy has ceased its practice of automatically adding its Shipping Protection fees to consumers' carts.

25. This change of practice is too little, too late to help the hundreds of thousands of consumers already deceived and exploited by Defendant, like Plaintiff.

### III. The Add On Fees Render Promises of Free or Flat Rate Shipping False, or At Best Ambiguous

26. Even beyond the deceptive manner in which the fees are added, the fees themselves are deceptive because they directly contradict other promises on Juicy's website regarding "free"

6

or flat-rate shipping. That is because Juicy's add-on fees are, in actuality, a disguised shipping charge.

27. Whatever the add-on fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers.

28. But as described herein, Juicy promised "free" shipping on certain orders and flat rate shipping on other orders. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" or flat rate shipping price promise. Juicy tacks on this added fee regardless of the free or flat rate shipping promise it made.

29. Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

30. Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee at the same time as a promise of "free" or flat-rate shipping was being made.

31. Because it is well known that American consumers prefer free or low-cost shipping costs, Defendant made an intentional decision to disguise its true price for shipping from consumers.

32. The deceptively added fee is a hidden shipping fee. This renders false Juicy's promise of a free or a flat, low-cost shipping fee.

33. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

34. In addition to the manner in which the fees are added and the fact that the added fees render other "free" or flat rate shipping promises false and deceptive, Defendant's fees are

nonsense fees that provide little or no value to consumers.

### IV. Defendant's "Shipping Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers

35. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or flat-rate shipping, the "Shipping Protection" fees are also deceptively named and described.

36. First, the fee provides little or no *additional* "protection" for shipments than already exists. Online retailers like Juicy already provide replacements and allow for returns of products. Indeed, Juicy offers 30 day returns on its website for all items. Therefore, the add-on fee provides no extra protection for goods that arrive damaged. Defendant misrepresents, and omits material facts about, that truth.

37. Moreover, popular shipping services like UPS, FedEx, USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the add-on fee is entirely worthless, because they are already provided the same protection by the shippers.

38. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

39. For all these reasons, the "Shipping Protection" fee is deceptively named and described.

40. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or

flat-rate shipping, and the fact that the add on fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the add-on fee because it provides essentially zero additional value to consumers.

41. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee provides no benefit.

## V. Defendant's Fees are Junk Fees and Violate Federal Guidance and New York Law

42. Defendant's shipping fees, such as the Shipping Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

43. As the Federal Trade Commission said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-

9

events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.'

44. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

45. Defendant violates federal guidance and New York law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## VI. Plaintiff's Experience

46. Plaintiff used Defendant's website, juicycouture.com, to purchase over $150 of clothing on September 1, 2024 to be delivered to her residence in Minneapolis, Minnesota.

47. When using the website, Plaintiff was repeatedly informed that she would get free shipping as part of her purchase. Plaintiff justifiably relied on this promise when choosing to make a purchase over $150.

48. However, Plaintiff's purchase included a $5.35 charge for a "Shipping Protection by Route" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

49. Plaintiff did not know the charge existed or could be removed prior to her purchase.

50. Plaintiff would not have purchased "Shipping Protection" if she knew it was

optional, and if it was not surreptitiously added to Plaintiff's cart without Plaintiff having done anything at all.

## CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. The Class is defined as:

> All persons who, during the applicable statute of limitations, were charged a Shipping Protection Fee or similar fee by Defendant.

52. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

53. Excluded from the Class are Defendant, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54. The members of the Class are so numerous that joinder is impractical. The Class consists of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

55. The claims of the representative Plaintiff are typical of the claims of the Class she seeks to represent in that the representative Plaintiff, like all members of the Class, was charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Class, was damaged by Defendant's misconduct in that she was charged Shipping Protection fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all

members of the Class. Further, Defendant has no unique defenses that would apply to Plaintiff and not the Class.

57. 56. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

57. The questions of law and fact common to the Class include, but are not limited to, the following:

    a. Whether Defendant's assessment of Shipping Protection fees was unfair, deceptive, or misleading;

    b. Whether Defendant's assessment of Shipping Protection fees breached the contract;

    c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

58. Plaintiff's claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Shipping Protection fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

59. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

61. Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

62. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

63. Defendant has acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

64. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York General Business Law Section 349 *et seq.*
On Behalf of Plaintiff and the Class**

65. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

66. This cause of action is asserted on behalf of the Class, whose members enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

67. Juicy's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who made online purchases from Juicy.

68. The complained-of policies and practices were and are misleading in a material respect, because (a) Juicy sneaks these fees into consumers' shopping carts using a prechecked box; (b) the fees are nothing more than an additional cost for shipping, rendering Juicy's promise for "free" shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers.

69. Reasonable consumers, like Plaintiff, would not knowingly choose to pay the Shipping Protection fees, absent Defendant's deception.

70. Plaintiff and members of the Class were injured as a result of Juicy's policies and practices, in that they were charged Shipping Protection fees in a deceptive manner as described herein.

71. Juicy's actions were willful and knowing.

14

72. As redress for Juicy's repeated and ongoing violations of these consumer protection statutes, Plaintiff and members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
### False Advertising – N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiff and the Class)

73. The preceding allegations are incorporated by reference.

74. N.Y. Gen. Bus. Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

75. Defendant's actions regarding the Shipping Protection fee, as described herein, constitutes false advertising in the conduct of the business trade or commerce of apparel and accessories.

76. Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

77. Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

78. As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

79. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiff and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

81. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

82. Plaintiff and the Class conferred a benefit on Defendant.

83. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

84. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

85. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## FOURTH CAUSE OF ACTION
### Breach of Contract
**(On Behalf of Plaintiff and the Class)**

86. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

87. Plaintiff and Defendant have contracted for the purchase of merchandise.

88. No contract provision authorizes Defendant to be able to charge add-on fees to customers.

89. Defendant breached the terms of its contract with consumers by charging add-on fees such as the Shipping Protection fee.

90. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

91. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Beattie and the members of the Class seek an Order:

1. Certifying the proposed Class pursuant to Rule 23;

2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3. Declaring the Defendant has committed the violations of law alleged herein;

4. Providing for any and all injunctive relief the Court deems appropriate;

5. Awarding statutory damages in the maximum amount for which the law provides;

6. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7. Providing for any and all equitable monetary relief the Court deems appropriate;

8. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorney's fees;

10. Awarding pre- and post-judgment interest to the extent the law allows; and

11. Providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Date: May 28, 2025

Respectfully submitted,

/s/*Sarah M. Levin*
Sarah M. Levin
Amanda J. Rosenberg (*pro hac vice* forthcoming)
Jeffrey D. Kaliel (*pro hac vice* forthcoming)
KalielGold PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
slevin@kalielgold.com
arosenberg@kalielgold.com
jkaliel@kalielpllc.com

Sophia G. Gold (*pro hac vice* forthcoming)
KalielGold PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Tyler B. Ewigleben (*pro hac vice* forthcoming)
Jennings & Earley PLLC
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (317) 695-1712
tyler@jefirm.com

*Counsel for Plaintiff and the Proposed Class*